This case this morning is the case of Walter Settle v. Illinois Central Railroad. We have Mr. Kavach, Dr. Kelly, and Mr. Williams-Gabbard with the affidavits. You may proceed, sir. Thank you. May it please the Court, my name is Ken Holbein. I represent Illinois Central Railroad and we are here today on an interstate foreign non-convenience matter. In this matter, there is absolutely no connection whatsoever with the State of Illinois. This is an action under the FBLA for alleged exposure to asbestos and other hazardous materials, as claimed by plaintiff, involving a Mississippi resident, where all the exposure was in Mississippi, in which there is absolutely no connection whatsoever with the State of Illinois. This is a classic form shopping case. This case was initially filed in Mississippi in 2002. It was then dismissed in 2006, and then it was refiled in St. Clair County in 2009. There has been no allegation whatsoever that there was any exposure to the State of Illinois. The only connection that Plaintiff's Counsel has brought forth is basically my law firm. My law firm has traditionally represented Illinois Central Railroad in asbestos litigation throughout the nation. I thought they were trying to express the documents involved here in this historical document. And those documents are at my law firm. That's what I'm trying to say. I understand. These documents, Mr. Gavin, who had previously been with my law firm, has in fact found or participated in. But yes, there are documents at my law firm. That's the bottom line. That is the major connection that Plaintiff is trying to claim. However, that is no connection. As the courts have said, that in today's modern world with fax, e-mail, documents, I mean, Mr. Gavin has all of these documents. They can all be put to flash drives and transported. The location of the documents is not significant in this case. Was there any stipulation on documents, how they would be handled? How they would be handled? The copies, missed evidence and all that. Mr. Gavin and our firm has tried multiple of these cases. Mr. Gavin says he'd like to introduce the originals of these documents. That can certainly be done. There are stipulations as to what documents we are in possession of. But he knows. This is not something new. The other connections that he has attempted to make are essentially a hygienist for the Illinois Central, who is a guy named Len Burton, who is out of Chicago. And he argues that he wants to climb as a witness in Mississippi. I think he can actually subpoena him in Mississippi to attend. But regardless, he attends trial outside the state of Illinois and will be there. Mr. Garrett, who Mr. Gavin knows quite well, is the other witness. He's actually in Memphis, Tennessee. And Mr. Garrett, again, his deposition has been taken numerous times. He's testified outside the state of Illinois and he will, of course, he would be at trial again. What he doesn't want to talk about, but the court didn't seem to want to talk about, is that there are five former co-workers in Mississippi. That we certainly can't compel to come to the state of Illinois to testify. There are five doctors. All of the medical treatment that Mr. Fennell has undergone has occurred in the state of Mississippi. We can't compel any of those doctors to attend. The court did not address the possibility of a view of the scene. Mr. Garrett argues that, well, we haven't shown our burden that they would. It's not a burden to show that the court would allow a possibility. It's just a factor the court should consider. What is the alleged exposure, the nature of it? Well, he was a conductor and an engineer, I believe, which means that he is going to allege exposure throughout facilities in Mississippi. He is going to allege exposure, I anticipate, based upon riding on trains. But I would presume that a viewing is highly unlikely since most of the asbestos is no longer around. Well, no, there are repair facilities, things like that, that certain individuals who are claiming this type of case claim they were exposed in the repair facilities in Mississippi. Those facilities may be, you may want to look at those. But the products are no longer there, we hope. We hope. Let's just say they shouldn't be legally. I think in most cases abatement has occurred throughout everyone. And again, I've argued this similar issue before this court many times, and this is an intrastate case. The first question we have to address is, is there a connection with the state of Illinois? This is not an intrastate case where we're arguing whether it should be in St. Clair County or Champaign County or somewhere else. First question is, is there a connection with Illinois? Is it fair to burden the state of Illinois with the costs associated with the trial? And the answer is no. There is no significant reason why an Illinois jury really cares about a claim filed by a person in a different state, alleging exposure in a different state, while he was working long ago. And this is what the courts have been trying to avoid, and that is basic form trafficking. I mean, there's no explanation before the court as to why this case was filed, litigated for four years, then dismissed, and then brought back to Illinois. And the courts who have addressed very similar arguments, or very similar situations, have stated in Wagner v. Eagle Foods, in the Nardic, I can't pronounce it, versus Univand, that plighting dismissing a case after years of litigation, and subsequently filing nearly identical claims in a different form, infers form trafficking. I mean, I don't know how we could have a stronger case of form trafficking. There is no question that the private interest factors weigh strongly in favor of fairness. These co-workers, in trials like this, having not tried asbestos cases, I've tried many other types of cases over the years, but one thing we know, when we're in the middle of a trial, something can come up where the plaintiff claims something, or someone claims that there was, let's say, a cloud of asbestos floating around. If that was not addressed with one of these co-workers in a deposition, if we're at trial in Mississippi, we go out, send the sheriff out, we pick them up, we bring them back. Those are the kinds of situations that the defense is put into, because we don't always know exactly what the plaintiffs are going to claim. So, when we get right down to it, all the private interest factors weigh strongly in favor of dismissal. The co-workers, the doctors, the family members, everybody that would testify is down there. So, the inconvenience to the defendant would be, in addition to not being able, perhaps, to subpoena some of the Mississippi residents, what? Well, for instance, our... well, mainly it's that. I'm not going to try to tell the court that, you know, that people, I mean, you know, our company witnesses, certainly it's closer for Mr. Garrett to go from Memphis to Mississippi than it is to St. Clair County, but I'm not going to try to argue before this court that Mr. Garrett doesn't go where he has to go, of course. It may be inconvenient for him, it may cost us extra money, but the reality is that he will go. The inconvenience is that the local witnesses, the co-workers, the doctors, those kind of things we can't compel. But more importantly, and I believe very strongly that the Supreme Court has made it very clear that it is not just an issue of inconvenience when it is an interstate case. The question, as the Supreme Court said in Gridley, is does it have a connection with Illinois? And the answer here is clearly it doesn't. The inconvenience factor, you know, is not as important as, quite frankly, why should the state of Illinois, who unfortunately we're not exactly doing well financially, but why should the burden be on the citizens of the state of Illinois in order to try this case that has no connection, it's not a resident, there's no exposure alleged in Illinois, and it really has nothing to do with it. Thank you very much. Thank you. We have the opportunity for rebuttal. Mr. Gannon? I am pleased to report, Mr. Haldex, William Gannon for the plaintiff. I'd like to answer a couple of questions posed by the court. Justice Welch, you asked, is there a stipulation on the handling of the documents? And by that I presumed you meant how the documents would be preserved. Copies, mainly. No, there is not. And this collection of papers called the Alton Railroad documents is, from my perspective, very important to produce the original documents as opposed to copies. The original documents, because of their appearance, reflect a presence of authenticity, of ancientness, of credibility to a jury as opposed to the copies that are contained in the supplemental volumes before you. Justice Chapman, you asked the question, I believe, about the presence of the asbestos products in the facilities and what have you. Because Mr. Fennell was a transportation employee, an engineer and conductor, he was in many different facilities moving railroad equipment throughout his life. There's no one identifiable place that he was exposed to these substances. And then, most importantly... Were they in Mississippi? They were in Mississippi to a large extent, Your Honor. Is there any evidence of being in Illinois? No, sir. No work in Illinois. What is it about the original nature of the documents? You're not contending that there's something contained in there that can't be displayed in a copy? I was trying to get your intent. The copies that we have been able to obtain over the years are legible. I'm not here saying I don't have a legible copy of the Alton Railroad documents. What I'm trying to say is that the documents, the original documents, appear to, because of the nature in which they're created, the old carbon paper kind of typing and so forth, appear to be what they are intended and presented for, and that is to show a recognition by Illinois Central, in Illinois, with other Illinois railroads, 70 to 80 years ago, that asbestos was hazardous, and beyond that, an agreement with these other railroads operating in Illinois, all of these meetings took place in Illinois, to an agreement to conceal the hazards of asbestos from their employees. So are you saying that it hasn't been identified? I am, Your Honor. They see the original documents? I am, Your Honor. And to finish the point I was trying to make about the facilities, Your Honor raised the point, well, these facilities presumably don't have asbestos in them, and the rolling equipment presumably does not have asbestos in it. What we do know is that the documents, the abatement documents, which show what kind of asbestos was in these facilities, and what kind of asbestos was on this rolling equipment, is in St. Clair County, Illinois, at this depository on West Main Street. And that's where the evidence is. And the railroad loses sight of two fundamental principles in this appeal. The first is, of course, did the circuit court abuse its discretion in denying the motion? And this court and many other courts have said many times that the circuit court may not be reversed unless it acted arbitrarily without employing conscious judgment and exceeded the bounds of reason and ignored recognized principles. Judge Quito's order is a very detailed order showing exactly how he proceeded through his consideration. First, he noted that it was the defendant's burden. Then he noted that the plaintiff's choice is entitled to less deference. And then he went through the various factors of a forum non-convenience consideration. He noted that this depository, and it's incongruous for the railroad to stand in this court and say that Illinois has no connection with this case when the defendant has collected 80 years of evidence, historical evidence of its knowledge, its use, and its abatement of asbestos. And to some extent, its safety rules, and it even possesses asbestos products that it culled from its various facilities. All of this is in St. Clair County, Illinois. It's all there. And if any of this is needed in a trial, it's right there. The same convenience argument flips both ways on this. It's all five miles from the courthouse. That's why he took the photographs and put them into the record so the court could see the volume of this evidence. And so that goes directly to the source and availability of evidence and proof. And Judge Quito noted that there's 80 years of this, and it's critical to the plaintiff's case because the plaintiff starts these cases out by showing knowledge. The railroad knew or should have known, and that's always an issue in an occupational MPLA case. And then next comes the question, well, what did the railroad do with this knowledge? And that's where Mr. Burton, an industrial hygienist, and who's more than an industrial hygienist, he's certified in asbestos management procedures. He comes in and testifies that yes, we knew this, and yes, we really didn't do anything about it. And his testimony is critical to the plaintiff's case. And Judge Quito rightly recognized that I can compel Mr. Burton, either through Rule 237 or through the use of a subpoena, to appear in person in a St. Clair County trial. I cannot do that in Mississippi. I don't believe that Mississippi Rule 45 entitles plaintiff to take a Mississippi subpoena and serve it on a man in Champaign and make him cross state lines to come to Mississippi. Well, what can you do about the five lay witnesses, I guess, in Mississippi and also the medical witnesses? Well, my statement on this, Your Honor, is likely to be as unfounded as the railroad's statement. That is, when I say unfounded, I mean in the record. These types of witnesses simply are not called to trial in these cases. And to the extent that a treating physician is called to trial, it's always done by a deposition and always done by a video deposition. I haven't been in one of these trials yet where the railroad has called a co-worker to come testify at trial. So I realize that's just me stating my experience, and that statement is as unfounded in the record as the railroad's assertion that all these people will be necessary. The railroad did list every person whose name was disclosed in a discovery response in its motion, but it did not provide this Court with a description of the relevance of their evidence to the extent that we provided this Court with the prior testimony of Mr. Burton and Mr. Garrett so Your Honors could see exactly what these people have to offer to this case. So Mr. Burton and Mr. Garrett, you're our expert? No, sir. Mr. Burton is an employee of the railroad, and Mr. Garrett is an employee of the railroad. I call them as adverse witnesses. And so if this case goes out of Illinois, I cannot compel either one of those witnesses to testify, Mr. Burton and Mr. Garrett. I will have to rely on a deposition. Now, the railroad apparently, for the first time in this case, has stipulated that they would produce those two gentlemen live at trial. That's how I understood Mr. Halbach's comments, but that's not in the record in the court below. And that's very important to the plaintiff's case, as Judge Guido noted. I know that normally the convenience of counsel is not an important factor in litigation in these kinds of motions. But this type of case is different. Boyle Brasher, Mr. Halbach's firm, has a special degree of skill and experience in this case. They will follow this case wherever it goes, as will I. And so if this case goes to Mississippi, we're going to be in Mississippi. If it stays in St. Clair County, we're going to stay in St. Clair County. So I submit that in this case, the convenience of counsel is an important factor. What stage of discovery was the case in when it was dismissed from Mississippi? I don't know. Your honor, I was not involved in that litigation. I don't really have any information about that whatsoever. Was Mr. Halbach involved? His counsel was listed up counsel in that case. The issue of relative trial docket congestion was also dealt with Judge Guido. He stated very clearly in his order that St. Clair County trial dockets are not congested and that he would provide a trial date as soon as he was asked to do so. I think when the railroad says, is this fair? It loses sight of the fundamental principle of a foreign non-convenience motion and this court's standard of review. This court is, with all due respect, is not here to answer the question, is this fair? This court is here to answer the question, did Judge Guido abuse his discretion in denying the motion? That's the question, not is this fair? And the last point that I would make to the court is that the railroad has also lost sight of the ideal of equity from which foreign non-convenience flows. And I made this point first out in my answer to their petition. And that is they filed this motion and let it sit for 13 months. Did nothing. Made no effort whatsoever to bring it for hearing. Just let it sit in the trial court for 13 months. And the Ridley case, I believe, from the Supreme Court states that foreign non-convenience is about the effective judicial administration. And to allow a party, a defendant, to file a motion based in equity and let it sit for 13 months before it calls it up for hearing and then ask the court to dismiss the case and make the plaintiff start all over again is inequitable. A party acting with clean hands in equity would bring their motion to the court promptly. Thank you. Thank you, Mr. Chairman. Do you have one more? I would like to ask you what stage of discovery the case was in in Mississippi. And is that in the record anywhere? Well, Your Honor, quite frankly, I don't believe it is in the record. And quite honestly, I don't know. Okay. I'll put that out of my mind. I handle four non-convenience arguments for the Illinois Central asbestos, but I don't actually handle asbestos. And Bill knows as much as I do about that. You know, I heard Bill talk a lot about the documents, the documents, the things that we have got in our office, as if somehow that is decisive. To put it quite frankly, I could take those documents right now and move them to my St. Louis office. And then I guess they wouldn't be in St. Clair County. And then I could be saying, see, it has nothing to do with St. Clair County. I could take those documents and I could move them to my Memphis office. And then they would be down in Memphis, which is certainly closer to Mississippi. But that would be games playing. And that's what's really going on here with regard to this litigation. This is games playing. This case was pending in Mississippi for four years. Then it's filed in St. Clair County. This is forum shopping. Plain and simple. With all due respect, Bill, I like Bill. Bill's a very good lawyer. And I know he wasn't saying that my arguments were unfounded. He's saying there's nothing in the record, and I understand that. But if he wants to talk about equity, we can talk about it. Let's talk about the fact that they've taken a case that, quite frankly, easily would have been resolved long ago. Since it was dismissed, it was filed in 2002, dismissed in 2006. And here it is, 2011. The reason it is here in 2011 is because they chose to dismiss it, wait three more years, and then file it in St. Clair County. He makes an argument in his brief, he hasn't mentioned it now, he's mentioned equity about the local rule. We cite to the Knight v. Lloyd case that said no. The trial court decided to hear the motion. It felt that by local rule it shouldn't have. He was given every opportunity to present an argument, which he did. There was certainly no way. And, you know, the last but not least, I do want to address this question of the compelling witnesses. And I know Bill said that he doesn't believe that the Mississippi court can, in fact, compel. I will only cite to you the Mississippi Code, Section 13-3-93 and 99-9-11, which says any witness can be compelled to attend trial. And Mississippi Rules of Procedure, Rule 45A, doesn't say you cannot subpoena an out-of-state witness. Now, may there be jurisdictional arguments, and may we have a big fight over that sometimes? Maybe. Is it true that in the court below there was never indication that there was a stipulation to Mr. Burton and Mr. Garrett? It was never asked. We stated in our pleadings in the court and in our brief that we, in fact, do, that these gentlemen do and have testified outside the state of Alabama. Right, at your discretion, I would imagine. Well, in the end, let's be quite frank, if Bill wants to take their video deposition or he wants to try to compel them to get there, he's going to, at the very least, get a video deposition. Okay? Plain and simple. He knows in advance, because he's tried multiple of these cases, what he wants this witness to say. He already has it on paper, what he wants. We, on the other hand, if the case is tried in St. Clair County and an issue comes up, I'm not saying it will, that's the contingency's trial. Well, I guess the co-workers could be, have a video depo of them as well. Except for the fact we respond to the plaintiff's case. We can't know everything that's going to be put on in the case as well. Again, I don't try specialist cases. I've tried a lot of cases in multiple jurisdictions. And I will tell you, many times, no matter how many times I've been prepared, how many depositions I've taken of a witness, there has been times when a plaintiff has gotten up on the witness stand and said something that, quite frankly, may or may not have been true or was certainly different than what was said to me before. The only way I can find it, the only way I can counter it is to go get a co-worker or someone who was present at the time. And that we can't do in St. Clair County. Thank you.